FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2019 APR 11 PM 6: 43

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KATHIE WILSON SGIERS,
*Plaintiff,*

v.

LAMERS BUS LINES, INC. et al.,
*Defendants.*

Civil Action No. ELH-18-807

## MEMORANDUM OPINION

Plaintiff Kathie Wilson Sgiers filed a negligence suit in the Circuit Court for Frederick County, Maryland against Lamers Bus Lines, Inc. ("Lamers"), a Wisconsin-based charter bus company, and "John Doe," one of its drivers. ECF 2 (Complaint). The driver was subsequently identified as Robert Mohr. At the relevant time, plaintiff was a parent chaperone for a middle school trip from Chicago to Washington, D.C. *Id.* ¶ 3. Plaintiff claims that on February 15, 2015, while the group was traveling on a Lamers bus, she was injured when the driver "slammed on the brakes" as plaintiff was loading a movie into the bus's DVD player. *Id.* ¶ 6. Following the incident, plaintiff was transported to Frederick Memorial Hospital in Frederick, Maryland. *Id.* ¶ 7.

Lamers timely removed the case to this Court based on diversity jurisdiction. ECF 1 (Notice of Removal). Thereafter, Lamers moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) or, alternatively, for summary judgment under Rule 56. ECF 7. Lamers claimed, *inter alia*, that the accident occurred in Virginia, not Maryland, and therefore this Court lacked personal jurisdiction over Lamers. Plaintiff disputed the contention as to the location of the incident.

In a Memorandum (ECF 11) and Order (ECF 12) of May 2, 2018, I denied Lamers's motion, without prejudice. ECF 12. And, I granted limited discovery "on the question of the

location of the bus at the time plaintiff was injured." *Id.* at 3. I explained, *id.*: "The legal issue here is whether Maryland's long-arm statute is satisfied by Lamers' conduct. The answer depends entirely on a disputed fact, *i.e.*, whether the bus was in Maryland at the time of the injury."[1]

Jurisdictional discovery has since concluded. Now pending is Lamers's "Renewed Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Motion for Summary Judgment," pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 56. ECF 16. It is supported by a memorandum of law (ECF 16-1) (collectively, the "Motion") and numerous exhibits. ECF 16-2 - ECF 16-15. Lamers advances the same arguments that it previously asserted in its prior motion. *See* ECF 7-1.[2]

In particular, Lamers contends that this Court lacks personal jurisdiction over Lamers because the incident occurred in Virginia, not Maryland, and Lamers otherwise lacks the requisite minimum contacts with Maryland. ECF 16-1 at 7-18. Further, Lamers argues that, under the principle of *lex loci delictus*, Virginia law applies. *Id.* at 18-20. And, according to Lamers, Virginia affords a two-year statute of limitations for personal injury cases. *Id.* at 18 (citing Va. Code § 8.01-243(A)). Because plaintiff did not file suit until February 7, 2018, *i.e.*, almost three years after the date of the occurrence, Lamers maintains that plaintiff's claims are time-barred. ECF 16-1 at 19-20.

Sgiers opposes the Motion (ECF 17), supported by a memorandum of law (ECF 18) and four exhibits. ECF 18-1 – ECF 18-4. She maintains that the injury occurred in Maryland. But,

---

[1] As the Fourth Circuit has said, "[c]ourts must generally decide jurisdictional issues first." *Va. Dept. of Corr. v. Jordan*, ___ F.3d ___, Appeal No. 17-7594, slip op. at 9 (4th Cir. April 11, 2019). This principle applies to personal jurisdiction. *Id.*; *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).

[2] Mohr has not responded to the suit. Plaintiff asserts that Mohr was served on February 19, 2018. *See* ECF 18 at 1. However, there is no indication on the docket that Mohr was served. And, in Lamers's Statement Concerning Removal (ECF 8), filed March 27, 2018, Lamers represented that Mohr had not been served. *Id.* ¶ 2.

2

"assuming *arguendo* that the accident did not occur in Maryland," plaintiff argues that defendant's "tortious failure and omission to seek medical attention in a reasonable time and manner" provide a basis for personal jurisdiction in Maryland. ECF 18 at 7-8.

Defendant has replied (ECF 22) and submitted two exhibits. ECF 22-1 - ECF 22-2.

For the reasons that follow, I shall construe defendant's Motion (ECF 16) as a motion for summary judgment and deny it.

## I. Factual Background

Lamers is incorporated in the state of Wisconsin with its "principal office" located in Green Bay, Wisconsin. ECF 16-4 (Affidavit of Kevin Lamers), ¶¶ 3-4. The company "mainly operates out of Wisconsin," *id.* ¶ 5, but it also has offices in Michigan and Florida. *Id.* ¶ 6; *see* ECF 16-5 (Michigan Registration); ECF 16-6 (Florida Registration).

According to Kevin Lamers, the company's owner and corporate secretary, Lamers has never had an office or a terminal in Maryland. *Id.* ¶ 6. Nor has it ever "employed a Maryland resident as an employee," "had a vehicle registered in Maryland," "contracted with a business entity incorporated in Maryland," "advertised its services in Maryland," or "had a fixed route in Maryland." *Id.* ¶¶ 7-10.

At the time of the incident, Sgiers was a parent chaperone for a middle school trip from Chicago to Washington, D.C. ECF 16-8 (Plaintiff Affidavit), ¶ 4. On February 15, 2015, the last day of the trip, Sgiers was a passenger on a charter bus owned by Lamers and driven by Robert Mohr. ECF 16-7 (Mohr Affidavit), ¶¶ 1-2; ECF 16-8, ¶ 5.

It is undisputed that on February 15, 2015, the group stopped for dinner at Magills Famous Pizza and Buffet ("Magills") in Annandale, Virginia. ECF 16-11 (Plaintiff's Answers to Defendants' First Set of Interrogatories) at 2. Sgiers said that, according to the trip itinerary, the

stop was to occur at 6:30 p.m. ECF 16-10 at 42.³ Sgiers estimated that the group was at Magills for an hour. *Id.* at 42-43. Following dinner, the group boarded two buses and began the drive back to Chicago. ECF 16-7, ¶ 3.

According to Sgiers, the group had been traveling for "probably 40, 45 minutes" when the students on her bus asked to watch a movie. ECF 16-10 (Plaintiff's Deposition), at 22; *see also* ECF 16-8, ¶ 7; ECF 16-11 at 2. "The DVD player was located in the luggage rack," above the front passenger seats and "immediately behind the bus driver." ECF 16-8, ¶ 8; *see also* ECF 16-10 at 22. Sgiers asked Mohr "for permission to load a DVD into the DVD Player." ECF 16-8, ¶ 9. Mohr "said yes," and Sgiers "turned the power on for the DVD Player." *Id.* As Sgiers "stood to load a DVD," the bus driver "slammed on his breaks," sending her "violently into the heavy metal handrail at the front of the bus[.]" *Id.* ¶ 10.

Sgiers estimated that the incident occurred between 8:15 p.m. and 8:30 p.m. ECF 16-10 at 43. She claims that "within a few minutes of the incident," Mohr pulled over the bus, and she "was looked at by the nurse," Colleen Meyer. ECF 16-8, ¶ 11. Meyer asked Sgiers how she was feeling, and Sgiers responded: "I think I'm okay." ECF 16-10 at 24. Sgiers then stood up and returned to her seat. *Id.*

According to plaintiff, Mohr continued to drive. *Id.* at 25-26. "After about two minutes of driving," Sgiers "lied down" across her seat row. *Id.* at 26. Plaintiff recounted that Meyer again asked her if she was okay, and Sgiers responded, *id.*: "Well, can you break your ribs in the back? . . . . I've at least cracked, if not, broken a rib or two."

By that point, Mohr had pulled over the bus in a parking lot, joined by the second bus that was traveling with the group. The second bus driver boarded Sgiers' bus and suggested that Sgiers

---

³ The itinerary was not included as an exhibit.

4

"get medical help." ECF 16-10 at 27. After approximately five to ten minutes, the decision was made to take Sgiers to the nearest hospital. *Id.*; ECF 16-8, ¶ 11.

According to Sgiers, she went to the hospital about "Ten minute [sic] later." ECF 16-10 at 43. She explained that Mohr drove only "for a few miles before [they] arrived at Frederick Memorial Hospital in Frederick, Maryland," about 50 miles from Annandale, Virginia. ECF 16-8, ¶¶ 12-13. At approximately 8:42 p.m., plaintiff arrived at the hospital. ECF 16-15 (Medical Records). Later that night, plaintiff was "life flighted" from Frederick Memorial Hospital to "University of Maryland Shock Trauma" in Baltimore for "emergency surgery." ECF 16-10 at 34.

Charles Rhodes, a faculty chaperone traveling on the second bus, averred that the group "had been travelling for some time when the buses pulled over" because Sgiers was hurt. ECF 16-9 (Rhodes Affidavit), ¶¶ 6-7.[4] At that point, Rhodes got off his bus to check on Sgiers. *Id.* ¶ 8. A decision was made to take Sgiers to the nearest hospital, and they drove only "for a couple of miles (2-5 miles) before [they] arrived at the hospital in Frederick, Maryland." *Id.* ¶ 9. Because the hospital was located in Frederick, Maryland, and considering "how short a period of time it took to get there," Rhodes concluded that "Sgiers' injury could not have occurred in Virginia, and must have occurred in Maryland." *Id.* ¶ 10.

Jennifer Lovejoy, a parent chaperone riding on the second bus, also claimed that, after leaving Magills, the group "drove a ways, but not too long, and then pulled off of the highway because something happened on the first bus." ECF 18-3 (Lovejoy Affidavit), ¶¶ 3, 8. Rhodes got off the second bus "to find out what happened" and "came back onto [the second] bus saying

---

[4] In its briefing, Lamers refers to Rhodes as "Rhoades." *See* ECF 16-1; ECF 22. However, I shall use the spelling of "Rhodes," consistent with his affidavit. ECF 16-9.

5

that Ms. Sgiers had been injured." *Id.* ¶ 9. The group then drove "a short distance to a hospital to drop Ms. Sgiers there to be examined . . . ." *Id.*

Lovejoy could not recall "exact times," but said that the group "had traveled into Maryland and very shortly after is when [they] pulled off the highway to follow the first bus because of the accident Ms. Sgiers had on the bus." *Id.* ¶ 11. And, the hospital was "only minutes away from where [the group] pulled off – just a few miles." *Id.* ¶ 12.

Lamers disputes plaintiff's timeline of events, so as to show that the incident would have occurred in Virginia, not Maryland. *See, e.g.*, ECF 16-12 (Meyer Affidavit)[5]; ECF 16-7 (Mohr Affidavit).

Soon after the incident, on February 16, 2015, Lamers completed an "Accident Report," signed by a Manager, Ed Shoning.[6] He wrote that the accident occurred at 7:00 p.m. in "Annadale, Va" [sic]. ECF 16-13 at 1. Moreover, in the section titled "Description of Accident," he wrote, in part: "Pulled out of restaurant and traveled a few blocks, we were slowing down for a red light – normal stop – small lady – wearing flat shoes – fell down into stairwell . . . ."

Meyer, who sat in the back of plaintiff's bus, averred that she saw Sgiers on the floor of the bus as a result of her fall. ECF 16-12, ¶ 4. Meyer claimed that at the time of the incident, the group "had not travelled that far away from the restaurant" and "had not been driving very long at all." *Id.* ¶ 5. According to Meyer, they "were still in the outskirts of the town where the restaurant was located" and they "were not on a major interstate yet." *Id.*

---

[5] Lamers refers to Meyer as "Meyers." *See* ECF 16-1; ECF 22. However, I shall use the spelling of "Meyer," consistent with her affidavit. ECF 16-12.

[6] The signature is difficult to decipher. I note that defendant claims that "Mr. Mohr generated the Accident Report[.]" ECF 16-1 at 15.

6

Immediately after plaintiff's fall, Meyer "ran down the aisle to see . . . if she was okay." *Id.* ¶ 6. At that point, "the driver stated that 'if we turn here, we are going away from whatever we might need for help,' meaning a hospital or a doctor." *Id.* ¶ 6. Sgiers "returned to her seat and told the driver 'No, I'm okay, I'm okay, I'm fine. You can keep going.'" *Id.*

Meyer then assisted Sgiers "with cleaning up her abrasions." *Id.* ¶ 7. In Meyer's words, Sgiers "did not give any indication that she was in severe pain at this point and there was nothing on her that indicated she required further immediate medical attention at this time." *Id.*

Meyer returned to her "seat in the back of the bus" but she "went up to [Sgiers'] seat several times to check on her as the bus continued to travel back to Illinois." *Id.* ¶ 8. In addition, Meyer and "a few other chaperones" called Rhodes "to make sure he was aware of what happened." *Id.* ¶ 9.

When Meyer checked on Sgiers again and asked "if anything was hurting," Sgiers "stated that yes, she was hurting." *Id.* ¶ 10. At this point, "it was decided that the bus should pull over" to a parking lot and that Sgiers "should get some help." *Id.* Meyer claimed that by this time, the "bus had been travelling for a long time," as "more than thirty minutes had passed from the time [Meyer] saw [Sgiers] on the floor of the bus to when [they] pulled over." *Id.* ¶ 11. Soon after, "both buses travelled to a nearby hospital that was a short distance away from where [they] stopped." *Id.* ¶ 12.

Like Meyer, Mohr stated that Sgiers was injured when "the bus was still located in Annandale, Virginia." ECF 16-7, ¶ 4. He stated, *id.*: "The bus had only travelled a few blocks when I slowed down for a stop light. As I slowed for a red light, a female passenger, who was standing on the bus, fell."

7

Lamers has also submitted a document titled "Chronological" (ECF 16-14), which it represents as a medical record, without objection. It does not appear to be a medical record, however. Rather, it purports to be a summary of the times of interaction with, or treatment provided to, plaintiff, at an unspecified place. *Id.* It also reports the "Incident Time" as "02/15 19:00 EST." *Id.*[7]

Additional facts are included in the Discussion.

## II. Legal Standards

### A.

When a nonresident defendant challenges personal jurisdiction, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). The burden "varies according to the posture of a case and the evidence that has been presented to the court." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016)

When the existence of jurisdiction "turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In its discretion, a court may permit discovery as to the jurisdictional issue. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). Or, the court may rule solely on the basis of motion papers, supporting legal memoranda, affidavits, and

---

[7] The entry as to the time of the incident does not appear pathologically germane. If it is not pathologically germane, it is not generally admissible as part of a medical record, even assuming that the exhibit is a medical record. *See, e.g., Hall v. Univ. of Md. Med. Sys. Corp.*, 398 Md. 67, 70-71, 86, 919 A.2d 1177, 1179-80, 1188 (2007); *State v. Garlick*, 313 Md. 209, 222, 545 A.2d 27, 33 (1988).

8

the allegations in the complaint. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). In that circumstance, the "plaintiff need only make 'a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge.'" *Grayson*, 816 F.3d at 268 (quoting *Combs*, 886 F.2d at 676); *see also Universal Leather, LLC v. Koso AR, S.A.*, 773 F.3d 553, 558, 560-61 (4th Cir. 2014).

Notably, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (emphasis in original) (citation omitted); *see Universal Leather*, 773 F.3d at 558; *Combs*, 886 F.2d at 676. Here, the court allowed discovery as to jurisdiction. But, as discussed, *infra*, the discovery is not conclusive.

## B.

Defendant's Motion is styled as a "Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Motion for Summary Judgment," pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6) and 56. A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to

present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[8]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Here, it is appropriate to address the Motion under Fed. R. Civ. P. 56, because the parties have conducted extensive discovery on the jurisdictional issue before the Court, *i.e.*, the location of the bus at the time of the incident.

---

[8] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

Fed. R. Civ. P. 56(a) provides that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, it must support its factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Notably, "[w]hen affidavits are used to support or oppose a summary judgment motion, they 'shall be made

on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' These requirements are mandatory." *In re French*, 499 F.3d 345, 358 (4th Cir. 2007) (Whitney, J., concurring) (quoting former Fed. R. Civ. P. 56(e), now codified without substantive change in Fed. R. Civ. P. 56(c)(4)).

Where, as here, the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, as just discussed, or "the burden on the moving party may [also] be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B). In such cases, the nonmoving party "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (citation omitted), *cert. denied*, 541 U.S. 1042 (2004).

Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Of import here, the judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

### III. Discussion

Defendant contends that there is no genuine dispute of material fact that plaintiff's injury occurred in Virginia. ECF 16-1 at 18-20. Thus, Lamers contends that there is no basis to exercise personal jurisdiction over Lamars in Maryland. Moreover, defendant claims that because the incident occurred in Virginia, the law of Virginia applies, under the principle of *lex loci delictus*.

Virginia affords a two-year statute of limitations for personal injury claims. *See* Va. Code § 8.01-243(A); *see also Joyce v. A.C. and S., Inc.*, 785 F.2d 1200, 1203 (4th Cir. 1986) (applying Virginia's two-year statute of limitations to a personal injury claim). However, plaintiff did not file suit until February 7, 2018, *i.e.*, almost three years after the occurrence. Accordingly, Lamers contends that, even assuming there is personal jurisdiction as to Lamers, plaintiff's claims are time-barred. ECF 16-1 at 19.

As to the location of the incident, defendant argues that affidavits of Meyer and Mohr, as well as plaintiff's medical records and Lamers's Accident Report of February 16, 2015, firmly place the bus in Virginia at the time of plaintiff's fall. ECF 16-1 at 13-15. As mentioned, *supra*, Meyer averred that when she saw plaintiff on the floor of the bus, the bus was "still in the outskirts of the town where the restaurant was located" and that she could see buildings outside of the bus. ECF 16-12, ¶ 5. At the time, the bus "had not travelled that far away from the restaurant" and "had not been driving very long at all." *Id.* Similarly, Mohr stated, ECF 16-7, ¶ 4: "At the time of the occurrence, the bus was still located in Annandale, Virginia."

Plaintiff counters that "the precise location of the accident, which is the material fact which forms the heart of this case, is hotly contested and genuinely disputed in that a reasonable jury could return a verdict for Plaintiff." ECF 18 at 11. Further, plaintiff asserts, *id.*: "There is conflicting evidence as to the precise location of where the accident in this case occurred. Some witnesses and party admissions state that the accident took place some miles outside of Annandale, Virginia. Other witnesses and depositions state that it occurred some miles outside of Frederick, Maryland." Therefore, plaintiff insists: "Defendant is not entitled to summary judgment as a matter of law." *Id.*

In asserting that her injury occurred in Maryland, plaintiff relies on her own affidavit (ECF 18-1), as well as the affidavits of Rhodes (ECF 18-2) and Lovejoy (ECF 18-3). In her Affidavit, plaintiff stated that the group "had been travelling for some time" before her fall. ECF 18-1, ¶ 7. In plaintiff's words, *id.* ¶ 11, "The bus driver pulled over within a few minutes of the incident and I was looked at by the nurse, and the decision was made to take me to the nearest hospital." Further, plaintiff avers, *id.* ¶¶ 15, 16:

> 15. Had the bus been in Virginia or at or near the point of departure, the bus driver would have taken me to a hospital in that area.

14

16. It is utterly absurd to think that if the incident occurred just a couple of blocks from the pizza place in Annandale, as Mr. Mohr alleges, that he would have driven all the way to Frederick Memorial Hospital in Frederick, Maryland, a distance of approximately 50 miles, rather than the hospitals close to where he alleges the incident occurred.

Rhodes stated that the group "had been travelling for some time when the buses pulled over because Kathie Sgiers was hurt" and, shortly thereafter, "[t]he decision was made to take her to the closest hospital." ECF 18-2, ¶¶ 7, 8. Then, the group drove only "for a couple of miles (2-5 miles) before [they] arrived at the hospital in Frederick, Maryland." *Id.* ¶ 9. He concluded, *Id.* ¶ 10: "Considering where the hospital in Frederick, Maryland is located and how short a period of time it took to get there, Kathie Sgiers' injury could not in Virginia, and must have occurred in Maryland."

Lovejoy also claimed that the group "drove a ways, but not too long, and then pulled off of the highway because something happened on the first bus." ECF 18-3, ¶ 8. Lovejoy then learned from Rhodes that "Sgiers had been injured" and that the group was "going to drive a short distance to a hospital to drop Ms. Sgiers there to be examined . . ." *Id.* ¶ 9. Lovejoy claimed that "very shortly" after the group "had traveled into Maryland," the second bus "pulled off the highway to follow the first bus because of" Sgiers' injury. *Id.* ¶ 11. From there, "[t]he hospital was only minutes away . . . just a few miles." *Id.* ¶ 12.

In response, defendant contends that Rhodes and Lovejoy, who were not passengers on plaintiff's bus, "have no personal knowledge of where the incident actually occurred." ECF 22 at 3. Rather, "they only have personal knowledge of where both buses pulled off the highway." *Id.*

In addition, defendant asserts that at her deposition, plaintiff "only *assumes* the occurrence took place in Maryland." ECF 16-1 at 11 (emphasis in original). She was asked, ECF 16-10 at 28: "Do you know if this [incident] happened in the Common Wealth [sic] of Virginia or the State

of Maryland?" Plaintiff responded, *id.*: "I assume it happened in Maryland. I was in a Maryland emergency room."

The parties present conflicting evidence as to the location of the bus at the time of the incident. Resolution of the conflict necessarily depends on the credibility of the witnesses. For the purpose of the Motion, it is salient that a reasonable factfinder could credit the claims of plaintiff and her witnesses.

Moreover, given the posture of the case, the court may not make credibility determinations. *Jacobs*, 780 F.3d at 569; *French*, 499 F.3d at 352; *cf. Berkenfeld v. Lenet*, ___ F.3d ___, 2019 WL 1510263, at *8 (4th Cir. April 8, 2019) (reversing district court's award of summary judgment because there was "'room for difference of opinion' . . ." on issue of contributory negligence). In other words, summary judgment is not appropriate in light of the "conflicting affidavits." *Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015); *see Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979) (summary judgment "may not be invoked where, as here, affidavits present conflicting versions of the facts which require credibility determinations."). Indeed, "[i]t is not [the Court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose [her], or to disregard stories that seem hard to believe." *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) (citing *Anderson*, 477 U.S. at 249 (at summary judgment stage, it is not for the judge to weigh the evidence)).

In sum, credibility determinations are solely within the province of the factfinder, not the Court. Therefore, the Court cannot determine the site of the incident. It follows that defendant is not entitled to summary judgment.[9] At trial, however, the burden will fall on plaintiff to prove

---

[9] Because the limitations issue turns on the location of the incident, I also cannot resolve the limitations issue.

16

the existence of jurisdiction, by a preponderance of the evidence. *See New Wellington Fin. Corp.*, 416 F.3d at 294 n.5; *see also Universal Leather,* 773 F.3d at 558; *Combs*, 886 F.2d at 676.

### IV. Conclusion

For the reasons stated above, I shall deny the Motion. An Order follows, consistent with this Memorandum Opinion.

Date: April 11, 2019

/s/
Ellen Lipton Hollander
United States District Judge